■ MICHAEL KORAL, Plaintiff, v RHONA KORAL, Appellant, and HERMAN H. TARNOW, Nonparty Respondent.—In a matrimonial action in which the parties were divorced by judgment dated December 1, 1989, the defendant wife appeals from an order of the Supreme Court, Nassau County (Di Noto, J.), entered May 25, 1990, which, (1) in effect, denied her motion to modify a stipulation of settlement and to vacate so much of the judgment of divorce as directed her to pay the respondent Herman H. Tarnow, her former attorney, $50,000, and (2) directed her to endorse over to him a check in the amount of $50,000 drawn on her former husband's pension.

Ordered that the order is reversed, as a matter of discretion, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for a hearing to determine whether a $50,000 counsel fee agreed to as part of a stipulation of settlement constitutes a reasonable fee in light of the services provided.

The respondent attorney Herman H. Tarnow represented the appellant Rhona Koral in the underlying divorce action. The appellant and her former husband entered into an oral stipulation of settlement in open court, during which the appellant agreed to pay the respondent a $50,000 counsel fee. The funds for the fee were to be provided by the appellant's former husband, who was to draw the money from his pension plan. Specifically, the stipulation required the appellant's former husband to direct the administrators of his pension plan to issue a $50,000 check payable to Rhona Koral, as "Alternative Payee". In exchange, the respondent agreed to "waive" payment of any additional fees which might have been still due and owing. The appellant had already paid the respondent $20,000 in counsel fees at some point prior to the execution of the stipulation. It also appears that the appellant had paid a previous attorney the sum of $10,000, and claimed that she still owed that attorney approximately $12,000.

The fee arrangement was discussed briefly when the stipulation between the appellant and her former husband was placed on the record. The respondent himself questioned the appellant with regard to her understanding of the fee agree-

ment and also informed her that the $50,000 check from the former husband's pension would constitute income to be reported on her tax return.

Subsequently, the Supreme Court, Nassau County, issued a "qualified domestic relations order" which directed that the appellant, as "alternate payee," was entitled to receive the $50,000 from her former husband's pension fund. Although the pension check was subsequently issued and sent to the respondent, the check was made payable to the appellant, who declined to endorse it over to the respondent.

The respondent then moved to compel the appellant to endorse the pension check over to him. In opposition to the application, the appellant argued that the respondent's $50,000, fee was excessive, that he had failed to document his entitlement to the fee through the submission of time sheets or other written records, and led her to believe that even though the $50,000 would be reported as income, it would not result in any additional tax liability to her. The appellant also claimed that she was essentially without representation in connection with the fee arrangement, inasmuch as the respondent's interests in this matter were in conflict to hers. In reply, the respondent pointed out that when the stipulation was being placed on the record, he had apprised the appellant that the check would have to be reported as income and that the appellant never indicated any dissatisfaction with the fee arrangement or the potential tax consequences flowing from it. Further, the respondent argued that in the absence of fraud or undue influence, the appellant was bound by the terms of the stipulation.

The Supreme Court granted the respondent's application, ordering the appellant to endorse the pension check over to the respondent. We reverse the order, and remit the matter to the Supreme Court, Nassau County, for a hearing with respect to the reasonableness of the $50,000 fee.

As a matter of public policy, "courts pay particular attention to fee arrangements between attorneys and their clients" *(Jacobson v Sassower,* 66 NY2d 991, 993). Moreover, it is well settled that the courts possess the traditional authority "to supervise the charging of fees for legal services" pursuant to their "inherent and statutory power to regulate the practice of law" *(Matter of First Natl. Bank v Brower,* 42 NY2d 471, 474; *Finkelstein v Kins,* 124 AD2d 92, 100; *cf., Shrauger v Shrauger,* 146 AD2d 955, 956). Further, "[a]n attorney has the burden of showing that a fee contract is fair, reasonable, and fully known and understood by the client" *(Jacobson v Sas-*

*sower, supra,* at 993). Significantly, " '[e]ven in the absence of fraud or undue influence, an agreement to pay a legal fee may be invalid if it appears that the attorney got the better of the bargain, unless [the attorney] can show that the client was fully aware of the consequences and that there was no exploitation of the client's confidence by the attorney' " *(Jacobson v Sassower, supra,* at 993, quoting from *Smitas v Rickett,* 102 AD2d 928, 929).

Although the respondent contends that the appellant's statements during the stipulation colloquy are dispositive as to the appellant's understanding of the arrangement and the fairness of his fee, we find otherwise. There is no evidence in the record from which it can be ascertained precisely how the fee arrangement was reached and whether, in fact, the $50,000 sum was a fair and reasonable compensation in light of the legal services actually rendered. While the respondent now claims that the $50,000 fee was reasonable and appropriate, he did not submit an affidavit of services or any type of documentation establishing the value of the legal services he provided *(cf., Matter of Phelan,* 173 AD2d 621; *Matter of Verplanck,* 151 AD2d 767).

It is true, as the respondent contends, that a stipulation of settlement placed upon the record in open court is generally binding upon the parties who have agreed to it *(see, Hallock v State of New York,* 64 NY2d 224; *Burkart v Burkart,* 182 AD2d 798; *Ruxton v Ruxton,* 181 AD2d 876; *Swanson v Bryant,* 160 AD2d 999). Here, however, the challenged fee arrangement does not involve the parties to the stipulation of settlement, but, rather, is between a party and her attorney. In any event, the existence of the stipulation does not foreclose this court from inquiring into the propriety of an attorneys' fee, even in the absence of undue influence or fraud *(Jacobson v Sassower, supra,* at 993).

Therefore, we remit the matter for a hearing, at which the court may inquire into whether the $50,000 fee was reasonable in light of the services provided. Thompson, J. P., Rosenblatt, Miller and Pizzuto, JJ., concur.