58

[822 NYS2d 257]

Jeffrey Ween, Esq., Doing Business as Jeffrey Ween & Associates, Appellant-Respondent, v Patricia Dow, Respondent-Appellant.

First Department, October 5, 2006

## APPEARANCES OF COUNSEL

*Law Offices of Bernard D'Orazio, P.C.*, New York City (*Bernard D'Orazio* of counsel), for appellant-respondent.

*The Halperin Law Firm, LLP*, New York City (*Guy S. Halperin* of counsel), for respondent-appellant.

## OPINION OF THE COURT

NARDELLI, J.

In this appeal, we are asked to determine, inter alia, whether a provision in a retainer agreement, which holds the client liable for attorneys' fees incurred in the collection of fees generated under the retainer agreement, is void as against public policy.

Defendant Patricia Dow owns the shares allocated to two co-operative apartments located in the NoHo section of Manhattan. Defendant, a single mother, resides in one of the units with her two daughters, and sublets the other as an income-producing commercial studio. Plaintiff Jeffrey Ween, Esq., doing business as Jeffrey Ween & Associates, was originally retained by defendant, pursuant to a retainer agreement dated September 15, 1998, in order to contest the cooperative corporation's refusal to allow defendant to sublet the commercial studio. The ensuing litigation, which plaintiff characterizes as complex, and

defendant describes as protracted due to the poor quality of plaintiff's services, eventually encompassed claims by defendant for the abatement of noise, vibration and fumes emanating from a garage and carpentry shop on the first floor of the building, and an action to direct the cooperative board to repair water damage resulting from a water leak in one of the apartments above her unit. The litigation took more than four years to wend its way through Housing Court, finally concluding in a settlement agreement dated March 11, 2003.

The retainer agreement provides, in pertinent part:

> "If client does not pay the charges for legal services and disbursements within 30 days of the date of the statement for the charges, law firm shall have the right to (a) terminate this agreement and cease representation of client and (b) collect from client interest at the rate of 1% per month on any amounts not paid within 30 days of the statement date, as well as to seek payment of any charges due.

> "If client fails to pay for charges due under this agreement and the law firm takes legal action and is awarded such charges, client shall owe to law firm costs, expenses and attorneys' fees (including but not limited to the reasonable value of the law firm's own work) attributable to law firm's collection proceedings and/or action."

Plaintiff commenced the within action by the service of a summons and complaint in July 2004, seeking to recover, on the basis of an account stated, $74,373.65, which purportedly reflects fees for legal services rendered plus accrued interest at the rate provided in the retainer agreement. Plaintiff, in his fourth cause of action, seeks to recover attorneys' fees and costs for collection, as set forth in the retainer agreement.

Defendant answered the complaint, and plaintiff thereafter moved for summary judgment on the account stated alleging, inter alia, that defendant had regularly remitted partial payments from 1998 through the end of 2002 and had never objected to the invoices. Defendant opposed the motion and cross-moved to dismiss the claim for attorneys' fees for prosecuting this action.

Defendant maintained that she repeatedly objected to plaintiff's fees, both orally and in writing, and that the only reason she continued making payments was because plaintiff had

convinced her that she could not retain another attorney until his entire fee had been paid. In one letter, dated August 8, 2001, defendant complained about the results of plaintiff's services and the lack of progress in the litigation, stating "I feel your bills are not at all honest . . . coming up with the money to pay you has been challenging. I would not mind doing so if only I were to see results . . . ." Defendant further averred that she was intimidated by plaintiff and had two friends accompany her to plaintiff's office on several occasions in order to protest the lack of progress and to dispute his bills, not only due to her own timidity, but also because plaintiff was "verbally abusive, cursing, throwing wild temper tantrums and turning purple with rage when the subject was raised."

Defendant contended that she eventually discovered that she was being charged for shoddy work and mistakes, including, but not limited to: two Housing Court proceedings which were dismissed, one that was withdrawn due to improper service, and the other in which the court declined to sign the order to show cause initiating the proceeding; three unsuccessful, and duplicative, contempt motions made in one Housing Court proceeding, all of which were denied for the same reasons; and the filing of a motion for consolidation, which was denied, after Civil Court had previously refused to sign an order to show cause for the exact same relief.

The motion court denied both plaintiff's motion for summary judgment and defendant's cross motion for partial summary judgment, finding issues of fact regarding whether defendant's objections were sufficient to deny plaintiff judgment on an account stated. The motion court further found that resolution of the issue of whether plaintiff was entitled to attorneys' fees for collection was premature, and that defendant had failed to demonstrate that the provision permitting plaintiff to seek to recover such fees violated New York law. Plaintiff appeals, defendant cross-appeals, and we now modify to grant defendant's cross motion to dismiss the fourth cause of action for collection of fees, and otherwise affirm.

■ Initially, we agree with the motion court that issues of fact exist as to whether defendant's oral and written objections are sufficient to defeat plaintiff's claim for an account stated, especially in light of plaintiff's failure to deny defendant's assertions that she appeared at his office, accompanied by friends, on more than one occasion, to register her objections (*see Heller, Horowitz & Feit v Stage II Apparel Corp.*, 270 AD2d 58 [2000];

*Herbert Paul, P.C. v Coleman*, 236 AD2d 268, 269 [1997]). In addition, we exercise our authority to search the record on a motion for summary judgment (*Continental Ins. Co. v 115-123 W. 29th St. Owners Corp.*, 275 AD2d 605, 606 [2000]; *99 Realty Co. v Eikenberry*, 242 AD2d 215, 217 [1997]) and find that plaintiff was properly denied summary judgment for the additional reason (*see ImClone Sys. Inc. v Waksal*, 22 AD3d 387 [2005]; *Matter of American Dental Coop. v Attorney-General of State of N.Y.*, 127 AD2d 274, 279 n 3 [1987]) that he failed to make a prima facie showing of an account stated, as the invoices submitted in support of the motion did not set forth his hourly rate, the billable hours expended, or the particular services rendered (*Kaye, Scholer, Fierman, Hays & Handler v Russell Chems.*, 246 AD2d 479, 480 [1998]; *Herbert Paul, P.C. v Coleman*, 236 AD2d at 269). Moreover, defendant's assertion that plaintiff misrepresented the law by advising defendant she could not hire another attorney until he was paid in full, a claim plaintiff does not specifically rebut, raises issues of fact as to whether both her partial payments, and her retention of invoices were, in fact, acquiescence to their correctness.

We now turn to defendant's cross motion, which seeks the dismissal of plaintiff's fourth cause of action for the recovery of collection fees. Defendant maintains that the provision in the agreement providing for such fees is void as against public policy, whereas plaintiff, on the other hand, contends, inter alia, that the clause is valid pursuant to general contract law.

Sir Francis Bacon, in commenting on the essence of the attorney-client relationship, stated that

> " '[t]he greatest Trust, between Man and Man, is the Trust of Giving Counsell. For in other Confidences, Men commit the parts of life; Their Lands, their Goods, their Children, their Credit, some particular Affaire: But to such, as they make their Counsellors, they commit the whole: By how much the more, they are obligated to all Faith and integrity' " (Anenson, *Creating Conflicts of Interest: Litigation as Interference with the Attorney-Client Relationship*, 43 Am Bus LJ 173, 194 n 98 [2006], quoting The Essays or Counsels, Civill and Morall, at 63 [Kierman ed, Oxford Univ Press 1985]; *see also Matter of Cooperman*, 83 NY2d 465, 471-472 [1994]).

In *Matter of Cooperman* (83 NY2d at 472), Judge Bellacosa further expounded that

"[t]his unique fiduciary reliance, stemming from people hiring attorneys to exercise professional judgment on a client's behalf—'giving counsel'—is imbued with ultimate trust and confidence. *The attorney's obligations, therefore, transcend those prevailing in the commercial market place.* The duty to deal fairly, honestly and with undivided loyalty superimposes onto the attorney-client relationship a set of special and unique duties, including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the clients' interests over the lawyer's. *To the public and clients, few features could be more paramount than the fee—the costs of legal services*" (citations omitted and emphasis added).

Moreover, with regard to attorney fee arrangements, the courts, as a matter of public policy, give particular scrutiny to the reasonableness of the fee arrangements between attorneys and clients pursuant to their interest in, and statutory power, to regulate the practice of law (*King v Fox*, 7 NY3d 181, 191 [2006]; *Matter of First Natl. Bank of E. Islip v Brower*, 42 NY2d 471, 474 [1977]), and it is the attorney that must shoulder the burden of demonstrating that "a fee contract is fair, reasonable, and fully known and understood by the client" (*Jacobson v Sassower*, 66 NY2d 991, 993 [1985]; *Koral v Koral*, 185 AD2d 298, 299-300 [1992]). Indeed,

" '[e]ven in the absence of fraud or undue influence, an agreement to pay a legal fee may be invalid if it appears that the attorney got the better of the bargain, unless [he] can show that the client was fully aware of the consequences and that there was no exploitation of the client's confidence in the attorney' " (*Jacobson v Sassower*, 66 NY2d at 993, quoting *Smitas v Rickett*, 102 AD2d 928, 929 [1984]).

In this matter, we find that the very nature of the provision, which permits the recovery of attorneys' fees by the attorney should he prevail in a collection action, without a reciprocal allowance for attorneys' fees should the client prevail, to be fundamentally unfair and unreasonable. Aside from its lack of mutuality, the clause, even if not so designed, has the distinct potential for silencing a client's complaint about fees for fear of retaliation for the nonpayment of even unreasonable fees (*see*

*Lustig v Horn*, 315 Ill App 3d 319, 327, 732 NE2d 613, 620 [2000], *lv denied* 192 Ill 2d 692, 742 NE2d 329 [2000]; *and see Gruber & Colabella, P.A. v Erickson*, 345 NJ Super 248, 252, 784 A2d 758, 760-761 [2001]). That being so, such a provision is not entitled to judicial sanction and is, therefore, unenforceable.

Finally, with regard to the recovery of interest by plaintiff on the purportedly unpaid balance, we note that defendant acknowledges interest may be charged, but that such interest must be fair and reasonable, a point with which we agree. In an ethical opinion dated February 2000, the Association of the Bar of the City of New York Committee on Professional and Judicial Ethics stated that:

> "In response to the third inquiry—concerning the appropriate interest rates that can be charged—we note that the fee charged a client shall not be 'illegal or excessive' and shall be 'reasonable,' *see* DR 2-106; EC 2-17. Though interest is not part of the fee, but rather compensation for delay in payment of the fee, the rate of interest should be subject to the same reasonableness requirement. Furthermore, any interest charged must also comply with all applicable laws, including usury laws." (Formal Op 2000-2.)

While at this juncture it is not possible to ascertain exactly what interest rate plaintiff is attempting to charge, or how it was compounded, due to the lack of documentation, we advise Supreme Court to bear the foregoing reasonableness standard in mind when, and if, plaintiff is able to establish his entitlement to recover fees.

Accordingly, the order of the Supreme Court, New York County (Jane S. Solomon, J.), entered July 29, 2005, which denied plaintiff's motion for summary judgment and defendant's cross motion for partial summary judgment, should be modified, on the law, defendant's cross motion granted and plaintiff's fourth cause of action dismissed, and otherwise affirmed, without costs.

TOM, J.P., SULLIVAN, CATTERSON and McGUIRE, JJ., concur.

Order, Supreme Court, New York County, entered July 29, 2005, modified, on the law, defendant's cross motion for partial summary judgment granted and plaintiff's fourth cause of action dismissed, and otherwise affirmed, without costs.