**Smith, Gambrell & Russell, LLP v 3 W. 16th St., LLC**

2024 NY Slip Op 33084(U)

September 3, 2024

Supreme Court, New York County

Docket Number: Index No. 654238/2021

Judge: Lyle E. Frank

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. LYLE E. FRANK** | PART **11M** |
| *Justice* | |

-------------------------------------------------------------------------X

SMITH, GAMBRELL & RUSSELL, LLP

                Plaintiff,

        - v -

3 WEST 16TH STREET, LLC,

              Defendant.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 654238/2021 |
| MOTION DATE | 07/07/2022, 09/02/2022 |
| MOTION SEQ. NO. | 001 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 46, 49, 51

were read on this motion to/for                 JUDGMENT - SUMMARY        .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 40, 41, 42, 43, 44, 45, 47, 48, 50, 52, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81

were read on this motion to/for                       DISMISSAL           .

Plaintiff Smith, Gambrell & Russell, LLP (Plaintiff) commenced this action on July 8, 2021, asserting causes of action for breach of contract, account stated, quantum meruit, unjust enrichment and constructive trust, to recover unpaid attorneys' fees from defendant 3 West 16th Street, LLC (Defendant) (*see* complaint [NYSCEF Doc No. 2]).[1] For the reasons set forth below, Plaintiff's motion for summary judgment, and Defendant's motion to dismiss the complaint in its entirety, converted to a motion for summary judgment pursuant to CPLR 3211 (c), are denied.

**Procedural History**

In motion sequence number 001, Plaintiff moved for summary judgment pursuant to CPLR 3212 on its causes of action for breach of contract, account stated, and quantum meruit, and sought an award of damages in the principal amount of $361,711.69 plus interest or, in the

---

[1] The Court would like to thank Brian Burns, Esq. for his assistance in this matter.

[* 1]

alternative, $329,717.32 plus interest, costs, and expenses (*see* notice of motion [NYSCEF Doc No 7]).[2] Defendant opposed.

In motion sequence number 002, Defendant moved for dismissal of the complaint, pursuant to CPLR 3211 (a) (5), alleging, among other things, that each of Plaintiff's causes of action are barred by the six-year limitations period applicable under CPLR 213 (*see* notice of motion [NYSCEF Doc No. 40]). Plaintiff opposed.

Motion sequences numbered 001 and 002 were consolidated for disposition. By decision and order dated December 15, 2022 (December 2022 Decision [NYSCEF Doc No. 52]), this Court granted Defendant's motion to dismiss, finding that the statute of limitations period on Plaintiff's claims for unpaid fees had expired before this action was commenced, and that Plaintiff's motion for summary judgment was thereby mooted.

In doing so, this Court described Plaintiff's arguments in opposition to dismissal, premised on Section 17-101 of New York's General Obligation Law (GOL), as unavailing because the proof of claim Defendant filed in the Ancona Bankruptcy, which Plaintiff asserted was an acknowledgement of Defendant's attorneys' fee debt that restarted the limitations periods on Plaintiff's causes of action, did not renew the limitations period because it "was unrelated to plaintiff and [] the defendant subsequently sued plaintiff for legal malpractice" (*id.*).

On October 3, 2023, however, the Appellate Division, First Department, unanimously reversed the December 2022 Decision, on the law, denying Defendant's motion on the ground that its post-answer motion to dismiss was untimely under CPLR 3211 (e) and remanded the matter, directing this Court to notify the parties that it will treat Defendant's motion to dismiss as

---

[2]     Plaintiff did not move for summary judgment with respect to its fourth cause of action for unjust enrichment or fifth cause of action for imposition of a constructive trust (*see* notice of motion [NYSCEF Doc No. 7]).

a motion for summary judgment in accordance with CPLR 3211 (c), and "to thereafter consider the merits of the motion, and if necessary, to consider the merits of plaintiff's motion for summary judgment" (First Department Decision [NYSCEF Doc No. 59]).

This Court held a status conference on October 13, 2023, at which time Defendant asked that its dismissal motion in sequence 002 be treated as a motion for summary judgment. The Court granted this request and directed Plaintiff to supplement its opposition to the now-converted motion for summary judgment by October 31, 2023, and directed Defendant to submit reply papers by November 30, 2023. The parties complied with these directives and the motion was fully submitted on December 14, 2023.

**Background**

Plaintiff is a domestic limited liability partnership engaged in the practice of law that maintains offices in Manhattan (affidavit of John G. McCarthy, Esq., ¶2 [McCarthy aff] [NYSCEF Doc No. 8]). Defendant is a domestic limited liability company that owns a mixed-use building located at 3 West 16th Street in Manhattan (Premises) (*id.* ¶6). Non-party Jack Braha (Braha) is Defendant's managing member (*id.* ¶7).

Defendant purchased the Premises in March 2006 (affidavit of Edward A. White, Esq. ¶3 [White aff] [NYSCEF Doc No. 11]). At the time, the Premises leased space to two synagogues which occupied its basement, first and second floors. Braha negotiated a 35-year triple-net lease on behalf of the synagogues with a shell entity created by Steven Ancona (Ancona), intended to allow the synagogues to remain at the Premises for the term of the Lease (*id.*). Plaintiff's predecessor firm represented Defendant in the purchase and lease transactions (*id.* ¶4).

In 2008, the synagogues commenced a lawsuit against the Defendant in this Court captioned *Magen David of Union Square v 3 West 16th Street, LLC* (Index No. 600573/2008)

(*Magen David* Action). Defendant retained Plaintiff's predecessor firm to represent it in that matter and the third-party action commenced against Ancona (Index No. 590326/2008) (*id.* ¶5), and eventually obtained an order in the *Magen David* Action, dismissing the complaint and granting summary judgment as to the synagogues' liability for breach of the lease and Defendant's third-party claim against Ancona for his guaranty of the lease (*id.* ¶7). The Appellate Division, First Department affirmed that decision on September 29, 2011 (*see* 89 AD3d 24) (*id.*).

Plaintiff merged with its predecessor firm in October 2012, while the second of the synagogues, Sixteenth Street Synagogue (SSS), Ancona, and Ancona's shell entity continued to litigate the *Magen David* Action (*id.* ¶¶8 and 9).

In 2013, Defendant directed Plaintiff to commence another action against Ancona and two limited liability companies to set aside certain fraudulent conveyances pursuant to New York's Debtor-Creditor Law, captioned *3 West 16th Street LLC v Ancona* (Index No. 153301/2013) (Ancona Action) (*id.* ¶10).

In February 2014, Plaintiff obtained a second decision and order in the *Magen David* Action, which granted summary judgment in Defendant's favor with respect to SSS's liability on its third and fourth counterclaims, while holding Defendant's motion for sanctions against SSS in abeyance until trial (*id.* ¶12). An appeal of this second decision and order was filed in February 2014 and resulted in a unanimous affirmance from the Appellate Division, First Department in October 2015 (*see* 132 AD3d 503).

Defendant incurred substantial legal expenses in these matters and, as of year-end 2013, owed Plaintiff more than $225,000 in unpaid fees and costs (*id.* ¶13). As of January 2014, Defendant had not made any payment toward reducing its outstanding legal fees since June

2013, which prompted Plaintiff to begin collection efforts (McCarthy aff, ¶14). In response, on or about February 18, 2014, Defendant made a $50,000 payment to Plaintiff (*id.* ¶15).

In March 2014, Plaintiff attorneys filed notices of appearance on Defendant's behalf in the United States Bankruptcy Court for the Southern District of New York with respect to a Chapter 11 case brought by Steven Ancona (Ancona Bankruptcy [Case No. 14-10532 (REG)]), and a related case filed by Ancona's company (*id.* ¶¶17-18).

On April 7, 2014, Braha notified Plaintiff that Defendant had hired an attorney from another firm, McLaughlin & Stern, LLP (M&S), to serve as counsel in the two bankruptcy cases and requested Plaintiff's help in transitioning the representation (*id.* ¶19).

On April 15 and 16, 2014, Edward White, on behalf of Plaintiff, and Braha, on behalf of Defendant, exchanged e-mails regarding approximately $180,000 in legal fees that were then outstanding. Plaintiff also forwarded by e-mail Defendant's "complete payment history with match-up with the matching invoices from inception through the February 2014 bill" (*see* ex C [NYSCEF Doc No. 37] to the affirmation of Raymond A. Cohen, Esq. [NYSCEF Doc No. 32]).

On May 12, 2014, White sent Braha an e-mail which outlined Plaintiff's proposals to resolve Defendant's outstanding debt, and asked Braha to telephone later that day or the following day to discuss (*id.*). On May 15, 2014, Braha responded by e-mail to state that he was "preoccupied" and "tied up with" the Ancona Bankruptcy and other matters. He also stated, in what appears to have been his first written complaint about Plaintiff's billing, that he was "formally objecting" to Plaintiff's "overreach" in seeking payment of "an exorbitant and unreasonable fee," and requested that White provide dates and times for them to meet to resolve the problem (*id.*).

Plaintiff asserts that, from April through September 2014, it continued to discuss the outstanding fees with Defendant, while it also continued to provide Defendant and M&S the support and materials that they requested in the Ancona Bankruptcy (McCarthy aff, ¶20). As of July 31, 2014, Defendant allegedly owed Plaintiff $311,697 in attorney's fees (*id.* ¶21).

Plaintiff asserts that Defendant terminated its representation without cause in December 2014 (*id.* ¶22). Plaintiff further asserts that, on July 10, 2015, Defendant reaffirmed its debt to Plaintiff by filing an amended proof of claim (POC) in the Ancona Bankruptcy (*id.* ¶24, citing ex H thereto, ¶102 [NYSCEF Doc No. 16]).

Paragraph 102 of the POC states:

> "For the period between January 2006 through January 2015, based on the Lease and the Guaranty, 3 West 16th Street asserts a claim for the attorneys' fees and costs paid and/or incurred with the law firms Smith Gambrell & Russell LLP and Hartman & Craven LLP in an amount to be determined at trial but in no event less than $1,523,793.37. *See* Claimant's Document Production Bates Nos. 16150-16164 and 15925-37."

**Discussion**

**Sequence 002 – Defendant's Motion for Summary Judgment**

Upon reconsideration, the Defendant's motion, now for summary judgment, must be denied as Paragraph 102 of the POC is an acknowledgment of Defendant's legal fee debt sufficient to satisfy Section 17-101, and the date of its filing with the United States Bankruptcy Court occurred less than six years before Plaintiff commenced this action.

Section 17-101 of New York's General Obligation Law (GOL) provides that:

> "An acknowledgment *or* promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property"

(emphasis added).

"'This section restates the rule that a written acknowledgement *or* promise will toll the Statute of Limitations. . . *The writing, in order to constitute an acknowledgement, must recognize an existing debt and must contain nothing inconsistent with an intention on the part of the debtor to pay it'*" (*Banco do Brasil v State of Antigua & Barbuda*, 268 AD2d 75, 77 [1st Dept 2000] [emphasis added], *quoting Lew Morris Demolition Co. v Board of Ed. of City of N.Y.*, 40 NY2d 516, 520-21 [1976]; *see also Chase Manhattan Bank v Polimeni*, 258 AD2d 361, 361 [1st Dept 1999] [defendant debtor's personal financial statement, reflecting debts owed to plaintiff creditor, "constituted an 'acknowledgment or promise' within the meaning of [GOL] § 17-101, and was sufficient to revive plaintiff's time-barred claims on those debts"] [citation omitted]; *Sullivan v Troser Mgt., Inc.*, 15 AD3d 1011, 1011 [4th Dept 2005] [finding "the statute of limitations began running anew when defendant acknowledged its obligations under the contract"] [*citing* GOL § 17-101 and *Lew Morris Demolition Co., supra*]; *Whiteman Osterman & Hanna, LLP v Preserve Assocs., LLC*, 63 Misc3d 585, 599 [Sup Ct Albany County 2019] [finding "that defendants reaffirmed their indebtedness to plaintiffs. . .via written instruments executed by" defendants' managing member, and "thereby [began] the running of the six-year statute of limitations anew"] [*citing* GOL § 17-101 and *Lew Morris Demolition Co., supra*]).

Defendant argues that Plaintiff cannot establish that the POC constitutes a written acknowledgment of its debt to Plaintiff which would satisfy Section 17-101. Citing *National Westminster Bank USA v Petito* (202 AD2d 193 [1st Dept 1994]), Defendant contends that to restart the statute of limitations, Plaintiff would have had to show that the POC contains "a plain admission by the debtor that the debt is due, a plain statement that such debtor is willing to pay the debt and a new promise by the debtor that the debtor will pay the debt."

Defendant, however, misreads *National Westminster Bank*

"in arguing that section 17-101 requires more than a mere acknowledgment of the debt and must be accompanied by a promise to pay; that case merely holds that where the promise underlying a claimed revival of a debt is subject to a condition, such as bankruptcy court approval, there can be no revival if the condition is not met."

(*Chase Manhattan Bank v Polimeni*, 258 AD2d at 361).

Defendant relies on a quotation from *Lew Morris Demolition Co.*, repeated in *Gizzi v Gizzi,* to assert that "any alleged reaffirmation of a debt made during the period that the claim was ripe or thereafter – must be accompanied by 'circumstances amounting to an absolute and unqualified acknowledgement by the debtor of more being due, from which a promise may be inferred to pay the remainder'" (57 Misc 3d 1217[A], 2017 NY Slip Op 51531 [U], *3 [Sup Ct Monroe County 2017]). This quote, however, is not applicable here as it addresses a different rule that governs the tolling of a limitations period based on a debtor's partial payment of an admitted debt (*see Lew Morris Demolition Co.*, 40 NY2d at 521).

Defendant also quotes *Gizzi* to assert that "[f]ew litigants seeking to extend a statute of limitations based on alleged reaffirmation of the debt have hurdled the high bar set by the Court of Appeals because any purported acknowledgement must import 'a *clear* intention to pay'" (2017 NY Slip Op 51531 [U], *3, *quoting Estate of Vengroski v Garden Inn*, 114 AD2d 927, 928 [2d Dept 1985] [emphasis added]). The *Gizzi* quote, however, is incorrect. The passage in *Vengroski* ends with the phrase "an intention to pay," rather than "a *clear* intention to pay," and cites in support *Curtis-Wright Corp. v Interncontient Corp.* (277 App Div 13, 16 [1st Dept 1950] ["Under the (Civil Practice) act, as at common law, an acknowledgement is effective only if it imports an intention to pay or at least contains nothing inconsistent with an intention to pay"]). Thus, while "a *clear* intention to pay" will in support a reset of the limitations period, an

acknowledgment that "at least contains nothing inconsistent with an intention to pay" will also suffice to renew the limitations period.

Defendant argues further that, to revive the limitations period under Section 17-101, Plaintiff would have had to establish that Defendant had not "said or done anything inconsistent with respect to debtor's admission and promise to pay the debt." This is an overly broad reading of the statute. The POC, "in order to constitute an acknowledgement, must recognize an existing debt and must contain nothing inconsistent with an intention on the part of the debtor to pay it" (*Banco do Brasil*, 268 AD2d at 77 [internal quotation marks and citation omitted]). A new promise to pay is not needed and whatever Defendant may have done or said, beyond the four corners of the acknowledgment, has no bearing on the applicability of the statute.

Defendant, without citing any legal authority, makes several other arguments to support its contention that the POC does not qualify as an acknowledgement under Section 17-101. For example, Defendant asserts that, as Plaintiff was not a party to the Ancona Bankruptcy, the statements in the POC cannot be construed as a statement or acknowledgement "from Defendant to Plaintiff that Plaintiff's legal fees are a valid 'debt.'"

In another instance, Defendant asserts the POC did not acknowledge its debt for legal fees to Plaintiff because Defendant added Plaintiff's bills to the POC only "as a cautionary measure – simply because Plaintiff's claim existed."

Paragraph 102 of the POC satisfies the First Department's rule as applied in *Polimeni* (debtor's personal financial statement, reflecting debts owed to plaintiff creditor, "constituted an 'acknowledgment or promise'. . . sufficient to revive plaintiff's time-barred claims on those debts") and *Banco do Brasil*, *supra* ("an acknowledgement [] must recognize an existing debt

and must contain nothing inconsistent with an intention on the part of the debtor to pay it"). Accordingly, Defendant's motion for summary judgment must be denied.

**Sequence 001 – Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on its causes of action for breach of contract, account stated and quantum meruit. Plaintiff's motion for summary judgment for breach of contract is insufficient. To make its prima facie showing of entitlement to summary judgment for breach of contract, it needed to provide "a copy of the agreement, the billing records on the account, and an affidavit from an officer of the company . . . [averring] that [movant] had fulfilled all of its obligations under the agreement, but had not received the payments from [respondent] required under the agreement" (*Yonkers Ave. Dodge, Inc. v BZ Results, LLC*, 95 AD3d 774, 774 [1st Dept 2012] [citations omitted]). Plaintiff's submission is deficient as it does not include a copy of its retainer agreement or copies of the unpaid invoices, and so its motion must be denied.

Plaintiff's failure to submit copies of its unpaid invoices to Defendant also makes it necessary to deny its motion for summary judgment with respect to its cause of action for an account stated (*see Mintz & Fraade, P.C. v Docuport, Inc.*, 110 AD3d 496, 496 [1st Dept 2013] ["to state a prima facie case for account stated," plaintiff law firm required to submit invoices that set forth its "'hourly rate, the billable hours expended, or the particular service rendered"], *quoting Ween v Dow*, 35 AD3d 58, 62 [1st Dept 2006]; *see also Shaw v Silver*, 95 AD3d 416, 416 [1st Dept 2012] ["Plaintiff's bills were sufficient to create an account stated"] [citation omitted]).

Plaintiff's motion for summary judgment on its cause of action for quantum meruit must also be denied as such a claim is not amenable to summary disposition (*see Soumayah v Minnelli*, 41 AD3d 390, 391 [1st Dept 2007] ["To state such a cause of action [for quantum meruit], plaintiff must allege (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services" [citation omitted]; *and* NY PJI3d 4:30.1 [2023] ["In an action in quantum meruit, the issue of the reasonable attorney's fees is a proper one for the jury"], *citing Mercy Community Hosp. v Cannon Design, Inc.*, 235 AD2d 405 [2d Dept 1997] and *Chase Manhattan Bank, N.A. v Kalikow*, 143 AD2d 557 [1st Dept 1988]).

The Court has considered the parties' other arguments and find them unavailing.

**Conclusion**

For the foregoing reasons, it is hereby

ADJUDGED that Plaintiff Smith, Gambrell & Russell, LLP's motion in sequence number 001 for summary judgment with respect to its causes of action for breach of contract, account stated, and quantum meruit is denied; and it is further

ADJUDGED that Defendant 3 West 16th Street, LLC's motion in sequence number 002 for dismissal of Plaintiff's complaint, in its entirety, converted to summary judgment pursuant to CPLR 3211 (c).

20240903133806LFRANKF1F2B9DE54324860B0ED9DFCAC6C7E25

_____
**9/3/2024**
**DATE**

_____
**LYLE E. FRANK, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |