Schlam Stone & Dolan LLP v Harsh Imports, Inc. (2025 NY Slip Op 25013)

[*1]

Schlam Stone & Dolan LLP v Harsh Imports, Inc.

2025 NY Slip Op 25013

Decided on January 8, 2025

Supreme Court, New York County

Lebovits, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 8, 2025
Supreme Court, New York County

Schlam Stone & Dolan LLP, Plaintiff,

against
Harsh Imports, Inc. and HARSSH MADHOK, Defendants.

Index No. 655529/2023

Schlam Stone & Dolan LLP, New York, NY (Samuel L. Butt and Joshua D. Wurtzel of counsel), plaintiff pro se.
Anne Rosenbach, Esq., Massapequa, NY, for defendants.

Gerald Lebovits, J.

This is an action to collect on unpaid attorney fees, brought by plaintiff law firm, Schlam [*2]Stone & Dolan, LLP, against defendants, Harsh Imports, Inc., and Harssh Madhok. Plaintiff moves under CPLR 3212 for summary judgment in its favor and to dismiss defendants' affirmative defenses.[FN1]
Defendants oppose and cross-move under CPLR 3025 (b) for leave to amend their answer. The motion and cross-motion are each granted in part and denied in part.
BACKGROUND
A. The Underlying Federal-Court Actions
In 2022, defendants retained Schlam Stone to represent them in defense of a CPLR 3213 motion-action on a commercial-loan guarantee, brought against defendants by an Indian bank (non-party Bank of Baroda), and paid Schlam Stone a $15,000 retainer. (See NYSCEF No. 3 [retainer agreement]; Bank of Baroda, NY Branch v Harsh Imports, Inc., Index No. 650658/2022 [Sup Ct, NY County].)
Shortly after being retained, Schlam Stone removed the action from New York County's Commercial Division to the U.S. District Court for the Southern District of New York. (See NYSCEF No. 18 [notice of removal]; Bank of Baroda, NY Branch v Harsh Imports, Inc., Dkt. No. 22-cv-02257 [SD NY].) The record does not reflect what led Schlam Stone to conclude that defendants would be better off litigating the breach-of-guarantee claims against them in federal court, rather than the Commercial Division. Schlam Stone's first invoice does, however, show that the bill for the hours involved in researching and preparing the notice of removal, and then the initial filings in federal court, exhausted the entire $15,000 retainer. (See NYSCEF No. 4 [April 2022 invoice].)
About a month after the action was removed, the Bank of Baroda brought a pre-discovery summary-judgment motion against defendants. (See Bank of Baroda, Dkt. No. 22-cv-02257, ECF No. 26.) In December, after briefing on that motion was complete, Schlam Stone brought a second, related federal action on behalf of defendants against the Bank of Baroda, alleging that the bank had breached various contractual obligations owed by the bank to defendants in connection with the loan and guarantee at issue in the removed action.[FN2]
(See Harsh Imports, Inc. v Bank of Baroda, Dkt. No. 22-cv-10510, ECF No. 1 [SD NY Dec. 13, 2022].)
In March 2023, the district court in the removed action granted the bank's summary-judgment motion as to liability, and directed further briefing on the amount of the bank's damages against defendants. (See Bank of Baroda, Dkt. No. 22-cv-02257, ECF No. 62.) In the second federal action, the bank, after an unsuccessful mediation, moved to dismiss the claims against it in June of 2023. (See Harsh Imports, Dkt. No. 22-cv-10510, ECF Nos. 29-31.)
In September 2023, after the bank's motion for an award of damages in the removed action, and the bank's motion to dismiss the claims against it in the second federal action, were [*3]both fully briefed, Schlam Stone moved in both actions for leave to withdraw as counsel for defendants. (See Bank of Baroda, Dkt. No. 22-cv-02257, ECF No. 73; Harsh Imports, Dkt. No. 22-cv-10510, ECF No. 33.) The district court granted Schlam Stone's withdrawal motions. (See Bank of Baroda, Dkt. No. 22-cv-02257, ECF No. 77; Harsh Imports, Dkt. No. 22-cv-10510, ECF No. 40.)
In December 2023, both the removed action and the second federal action settled. (See Bank of Baroda, Dkt. No. 22-cv-02257, ECF No. 87; Harsh Imports, Dkt. No. 22-cv-10510, ECF No. 49.) On the current motions, defendants represent—and Schlam Stone has not disputed—that defendants obtained the settlement through direct, personal negotiations with the bank. (See NYSCEF No. 78 at ¶¶ 53-54).
B. This Action
Schlam Stone brought this action in November 2023 to recover unpaid legal fees incurred during its representation of defendants in the underlying federal actions. In addition to the $15,000 retainer, Schlam Stone billed defendants approximately $134,000, of which defendants have paid approximately $74,000. Schlam Stone has sued defendants for the unpaid balance, seeking damages of $60,617.53 on account-stated and breach-of-contract theories. (See NYSCEF No. 2 at 14-16.)
In February 2024, Schlam Stone moved under CPLR 3212 for summary judgment on its claims and to dismiss defendants' affirmative defenses (mot seq 001). (See NYSCEF No. 28.) While that motion was pending, defendants' initial counsel moved for, and obtained, leave to withdraw. (See NYSCEF No. 68 [order to show cause]; NYSCEF No. 71 [decision granting withdrawal].) At the end of October 2024, Schlam Stone moved, in effect, to renew its summary-judgment motion (mot seq 003), relying on the same papers it used in motion sequence 001. Defendants, now represented by different counsel, cross-moved for leave to amend their answer to add numerous affirmative defenses and two counterclaims.

 DISCUSSION
I. Defendants' Request for Leave to Amend Their Answer
On motion sequence 003, defendants cross-move under CPLR 3025 (b) for leave to amend their answer to add new affirmative defenses and counterclaims. Leave to amend under CPLR 3025 (b) is freely granted: Absent prejudice or surprise, leave should be denied only if the nonmovant establishes that the proffered amendment is "palpably insufficient or clearly devoid of merit." (Fairpoint Cos., LLC v Vella, 134 AD3d 645, 645 [1st Dept. 2015] [internal quotation marks omitted].) In opposing the motion, Schlam Stone argues that the proposed amendments are clearly devoid of merit. This court agrees in part, but only in part.
A. Whether the Proposed Amended Answer as a Whole is Clearly Without Merit
Schlam Stone argues that the proposed amended answer-with-counterclaims is necessarily devoid of merit as a whole for failure to comply with CPLR 3016 (f)—i.e., because it does not "indicate specifically" the items of services rendered by plaintiff as enumerated in the [*4]complaint, and "whether in respect of delivery or performance, reasonable value or agreed price," (NYSCEF No. 29 at 10-12; NYSCEF No. 88 at 11.) This argument is unpersuasive.
Defendants' proposed amended affirmative defenses are not intended to contest the accuracy or validity of any particular invoice sent to them by Schlam Stone. Instead, defendants allege that as a global matter, Schlam Stone's decision to litigate the underlying actions in federal court was "unnecessary and was cost ineffective to the defendants"; that plaintiff's legal services "were of inferior quality with no benefit to the answering defendants"; and that plaintiff's billing "was excessive and was unnecessary." (NYSCEF No. 85 at 3 [fifth and sixth affirmative defenses]; 4 [ninth affirmative defense]; 8 [second counterclaim].) These allegations—the truth or falsity of which is not at issue on this motion—"go[] to the entirety of the parties' dealings rather than to the individual contents of the account," such that "specific denials addressed to the account's items are not required." (Green v Harris Beach & Wilcox, 202 AD2d 993, 994 [4th Dept 1994]; accord Kessler v Surgent, 139 AD3d 442, 442 [1st Dept 2016] ["Where a defendant raises a defense that goes to the entire transaction, she need not make specific denial to the scheduled items."], citing Green, 202 AD2d at 993.[FN3]
)
B. Whether the Proposed Counterclaims are Clearly Without Merit
That the proposed answer-with-counterclaims is not categorically unavailing, as Schlam Stone would have it, does not resolve the legal viability of particular proposed counterclaims and defenses. The individual components of the proposed answer/counterclaims are addressed below.
1. The First Proposed Counterclaim
Defendants' first proposed counterclaim sounds in common-law indemnification and contribution. (See NYSCEF No. 85 at 6-7.) The legal theory underlying this counterclaim appears to be that if Schlam Stone obtains damages from defendants, those damages resulted from Schlam Stone's own negligence, such that defendants are entitled to recover them back. As an initial matter, this counterclaim is anomalous because common-law indemnity is typically a tort doctrine; and Schlam Stone's damages claims sound in contract.[FN4]
Even setting that aside, a common-law indemnity obligation running from A to B arises when indemnitor A's negligence helped bring about a result for which indemnitee B has been held liable to injured-party C. (See Correia v Professional Data Mgt., Inc., 259 AD2d 60, 65 [1st Dept 1999] [describing doctrine].) Here, defendants (Party B) would be seeking to recover back from Schlam Stone (Party A) the amount in contract damages that they themselves paid to Schlam Stone in the first place. That is [*5]not how common-law indemnification works.
This court agrees with Schlam Stone that leave to amend to assert this counterclaim should be denied because the counterclaim is clearly devoid of merit.
2. The Second Proposed Counterclaim
Defendants' second proposed counterclaim seeks to recoup the legal fees it paid to Schlam Stone on the ground that those fees were excessive and the legal services for which the fees were charged were "of inferior quality" and provided "no benefits to the defendants." (NYSCEF No. 85 at 8.) Schlam Stone argues that this counterclaim is foreclosed because defendants voluntarily paid the legal fees they would now be seeking to recover. (See NYSCEF no. 88 at 9.) This court agrees that the voluntary-payment doctrine bars most, but not all, damages sought by defendants on this proposed counterclaim.
The voluntary-payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." (Dubrow v Herman & Beinin, 171 AD3d 672, 673 [1st Dept 2019] [internal quotation marks omitted].) Defendants do not seriously dispute that notwithstanding their concerns (and indeed protests) about the amount of plaintiff's invoices and the quality of its representation, they made repeated fee payments (totaling $73,799.37) to plaintiff after the initial retainer was exhausted. As a result, defendants cannot now seek to recover those payments.
This court reaches a different conclusion with respect to the initial $15,000 retainer. A retainer, by definition, is deposited by the client with the attorney before services have been rendered. It is thus necessarily paid without "full knowledge of the facts."[FN5]
 (Dubrow, 171 AD3d at 673 [distinguishing between "payments to compensate [counsel] for their services" and "'deposits' made toward a retainer"].) Schlam Stone does not provide any authority—and this court's own research did not find any—for the proposition that the voluntary-payment doctrine nonetheless bars a client from seeking to recover from its former lawyer the amount of an initial, exhausted retainer.
Schlam Stone also argues that, irrespective of the voluntary-payment doctrine, defendants would be estopped from seeking to recover the amount of the initial retainer because defendants are deemed to have admitted the validity of the invoice that exhausted that retainer. (See NYSCEF No. 88 at 8-9.) This argument does not establish that leave to amend should be denied.
Schlam Stone relies on language in the parties' retainer agreement providing that "[i]f you do not assert a specific, written objection within 30 days of the date of a given statement, that statement will be deemed acceptable to you as rendered." (NYSCEF No. 3 at 2.) But the record reflects that immediately upon receiving Schlam Stone's first, retainer-exhausting bill, defendants emailed the Schlam Stone attorneys on the case to emphasize that defendants "are a very small company with very limited resources," that defendants' "intention with the limited [*6]resources we have is to create leverage with Bank of Baroda and come to a point where we can simply settle the case," and therefore to "request you to please review the invoice" with these considerations in mind. (NYSCEF No. 80 at 1.) The concerns expressed in this email about Schlam Stone's over-lawyering and over-billing on the case are sufficiently clear and specific, in context, to satisfy the written-objection requirement imposed by the retainer agreement and thereby avoid the estoppel on which Schlam Stone relies here. At the very least, on the current record Schlam Stone has not established that the increment of defendants' proposed counterclaim seeking to recover the amount of the retainer is clearly devoid of merit for CPLR 3025 (b) purposes.
C. Whether the Proposed Affirmative Defenses are Clearly Without Merit
Defendants' proposed amended answer includes 16 affirmative defenses. (See NYSCEF No. 85 at 2-6.) Schlam Stone provides arguments for why each of those defenses should be dismissed as without merit. (See NYSCEF No. 88 at 9-11.) The court agrees in part and disagrees in part.
With respect to the proposed second, fourth, eleventh, twelfth, thirteenth, and sixteenth defenses, the court agrees that the defenses are plainly without merit for the reasons given by Schlam Stone.[FN6]

The eighth defense fails because unclean hands is an equitable defense that is not available in an action for damages. (See Manshion Joho Ctr. Co., Ltd. v Manshion Joho Ctr., Inc., 24 AD3d 189, 190 [1st Dept 2005].) The fourteenth affirmative defense fails because whether or not a new/amended retainer agreement was required here for the second federal action brought against Bank of Baroda (compare 22 NYCRR 1215.1 [written engagement/retainer agreement requirement], with id. § 1215.2 [b] [exception to this requirement]), an attorney's "failure to comply with the letter of engagement rule . . . does not preclude it from recovery of legal fees under a theory of account stated." (Jaffe Ross & Light, LLP v Mann, 121 AD3d 480, 481 [1st Dept 2014].)
The court declines to dismiss the first affirmative defense (failure to state a cause of action) because that defense may be raised at any time in the action, up to and including trial, whether or not initially pleaded. (See Chelsea 8th Ave. LLC v Chelseamilk LLC, 220 AD3d 565, 566 [1st Dept 2023].) For the reasons discussed above in Point I.B.2, the fifteenth affirmative defense is not subject to dismissal with respect to a claimed offset from the initial $15,000 retainer.
The proposed third, fifth, sixth, seventh, ninth, and tenth affirmative defenses raise essentially the same issues and are considered together. Although framed slightly differently, [*7]each of these defenses raises the same basic argument: Schlam Stone should not be able to collect the $60,617.53 it claims here, because it deliberately over-billed (and then under-delivered) in the underlying actions. Schlam Stone contends that these defenses fail because they are barred by the "specific[] written objection" requirement in the parties' retainer agreement. (See NYSCEF No. 88 at 10.) This court agrees with respect to the increment of Schlam Stone's claimed fees incurred in defending the action brought by Bank of Baroda against defendants; but not with respect to the increment of fees incurred in pursuing defendants' action against Bank of Baroda—approximately $38,000 of the approximately $60,000 claimed in total.
The record reflects that after the first invoice, defendants did not furnish specific, written objections to particular invoices within 30 days of receiving those invoices. To the extent that those invoices are governed by the retainer agreement, defendants are deemed under that agreement to have agreed to the amounts in those invoices. Crucially, though, the invoices are not fully governed by the retainer agreement.
This agreement provides that defendants "have retained [Schlam Stone] to defend them in the action captioned Bank of Baroda, New York Branch v. Harsh Imports, Inc., et al., Index no. 650658/2022, which is currently pending in New York State Supreme Court." (NYSCEF No. 3 at 1.) Given the specific scope of the representation described in the retainer agreement—namely defending defendants in a particular action brought against them—the agreement governs, at most, Schlam Stone's representation of defendants in the removed federal action. It does not encompass legal services rendered by Schlam Stone on defendants' behalf in the second federal action brought by defendants against Bank of Baroda.[FN7]

The point here is not that a second retainer/engagement agreement was necessarily required to have been executed under 22 NYCRR 1215—a matter on which this court expresses no opinion. Nor, as noted above, would the absence of a retainer agreement bar Schlam Stone from recovering unpaid legal fees from defendants on an account-stated (or quantum meruit) theory. But the retainer agreement's "specific written objection within 30 days" requirement imposes a higher burden on defendants to avoid an account stated than does common-law doctrine, which requires only that the party being billed object, whether in writing or verbally, "within a reasonable time." (Epstein Reiss & Goodman v Greenfield, 102 AD2d 749, 750 [1st Dept 1984] [internal quotation marks omitted]; accord Ween v Dow, 35 AD3d 58, 61 [1st Dept 2006] [affirming denial of summary judgment on plaintiff's account-stated claim based on evidence of "defendant's oral and written objections" to plaintiff's fee invoices, including objections made in person].)
Defendants have sufficiently alleged, both in the proposed amended answer and in the supporting affidavit of Harssh Madhok (see e.g. NYSCEF No. 78 at ¶¶ 14-26, 29-37, 42-43, 46-50), that they repeatedly objected to Schlam Stone's billing over the course of 2022 and 2023. Given these allegations (and supporting documentation), defendants' proposed affirmative defenses challenging the amount of Schlam Stone's bills and the quality of its representation are not plainly devoid of merit as they pertain to bills (and representation) rendered in the second federal action.
[*8]II. Schlam Stone's Request for Summary Judgment
Schlam Stone moves under CPLR 3212 for summary judgment in its favor, and summary judgment dismissing defendants' affirmative defenses and counterclaims.[FN8]
The motion is granted in part and denied in part.
For the reasons discussed above, Schlam Stone has established as a matter of law that it is entitled to the unpaid fees incurred in connection with the first, removed action (totaling $22,732.53), whether on a breach-of-contract or an account-stated theory.[FN9]
However, Schlam Stone has not, on this record, established as a matter of law that it is entitled to the remaining $37,885 incurred in connection with the second federal action. That amount is outside the scope of the parties' contract. And defendants have introduced evidence raising material disputes of fact about whether plaintiff is entitled to recover that amount through an account stated (or, indeed, in quantum meruit). Further, the request for summary judgment dismissing defendants' affirmative defenses and counterclaims, as applied to the proposed amended answer, is granted in part and denied in part for the reasons set forth above.
Schlam Stone also seeks an award of attorney fees as the prevailing party, as provided for in the retainer agreement. Given this court's partial denial of the request for summary judgment in plaintiff's favor, and the partial grant of defendant's request for leave to add the second counterclaim, discussed further above, it is not yet clear whether either party has prevailed (and, if so, who). The request for attorney fees is therefore denied without prejudice as premature.
Accordingly, it is
ORDERED that the branches of Schlam Stone's motions seeking the grant of summary judgment in its favor on damages (mot seqs 001, 003) are granted in part and denied in part; and it is further
ORDERED that the branches of Schlam Stone's motions seeking dismissal of defendants' counterclaims and affirmative defenses, as set out in defendants' proposed amended answer (mot seqs 001, 003) are granted in part and denied in part; and it is further
ORDERED that the branches of Schlam Stone's motions seeking an award of attorney fees incurred in this action (mot seqs 001, 003) are denied without prejudice; and it is further
ORDERED that defendants' cross-motion for leave to file an amended answer (mot seq 003) is granted with respect to
(i) the admissions and denials contained on pages 1 and 2 of the proposed amended answer filed at NYSCEF No. 85;
(ii) the first affirmative defense; the third, fifth, sixth, seventh, ninth, and tenth affirmative defenses, limited to the fees claimed by Schlam Stone that were incurred in connection with the second federal action brought by defendants against Bank of Baroda; [*9]and the fifteenth affirmative defense, with respect to any offset resulting from disgorgement of part or all of the initial $15,000 retainer; all as contained in the proposed amended answer;
(iii) the second counterclaim asserted in the proposed amended answer, limited to seeking damages in the amount of, and related to the exhaustion of, the initial $15,000 retainer;
and the cross-motion is otherwise denied; and it is further
ORDERED that within 14 days of entry of this order, defendants shall file an updated amended answer conforming to this decision's disposition of the cross-motion which, upon filing, shall become defendants' operative pleading in this matter; and it is further
ORDERED that Schlam Stone shall reply to any counterclaims included in the conformed amended answer within 20 days of its filing; and it is further
ORDERED that Schlam Stone is awarded a judgment against defendants, jointly and severally, for $22,732.53, with interest running at the statutory rate from November 2, 2023, plus costs and disbursements as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further
ORDERED that the balance of the claims, defenses, and counterclaims in this action are severed and shall continue; and it is further
ORDERED that Schlam Stone shall serve a copy of this order with notice of its entry on defendants and on the office of the County Clerk (by the means set forth in the court's e-filing protocol, available on the e-filing page of the court's website, https://ww2.nycourts.gov/courts/1jd/supctmanh/E-Filing.shtml), which shall enter judgment accordingly.
DATE 1/8/2025

Footnotes

Footnote 1:Technically, plaintiff has moved for summary judgment in two separate motion sequences, 001 and 003. But the two motions seek the same relief and rely on the same motion papers. This decision therefore considers the two motions together.

Footnote 2:Given the close relationship between the two actions, they were assigned to the same district judge.

Footnote 3:To the extent that plaintiff is suggesting that the First Department construes CPLR 3016 (f) as imposing a different, more demanding pleading burden than that described in Green (see NYSCEF No. 88 at 2-3), this court disagrees.

Footnote 4:Similarly, contribution is a means of (re)apportioning the relative liability among two or more tortfeasors. (See Shelton v Chelsea Piers, L.P., 214 AD3d 490, 491 [1st Dept 2023].) This doctrine has no bearing here, when the initial damages claim brought by Schlam Stone does not sound in tort.

Footnote 5:The possibility that a client might protest its counsel's claim that counsel's services had exhausted the retainer should not be sufficient, standing alone, to implicate the voluntary-payment doctrine—at a minimum, a significant difference exists, practically speaking, between making a payment and trying to claw back a payment once made.

Footnote 6:With respect to the proposed thirteenth affirmative defense (failure to serve the Part 137 arbitration notice), the court also notes that (i) the retainer agreement expressly notified defendants of their Part 137 arbitration rights (see NYSCEF No. 3 at 3), and (ii) Schlam Stone specifically alleged in its complaint that it had provided that notice and that the amount in controversy was at least $60,617.53, exceeding the $50,000 limit of the Part 137 arbitration program (see NYSCEF No. 2 at ¶¶ 91-93). No more is required. (See Wagner Davis P.C. v Gargano, 116 AD3d 426, 426 [1st Dept 2014].)

Footnote 7:Schlam Stone does not contend that it entered into a second retainer/engagement agreement with defendants, or otherwise amended or extended the initial agreement.

Footnote 8:As initially filed, Schlam Stone sought dismissal only of the affirmative defenses in defendants' initial answer. The court has construed the motion as directed also to the affirmative defenses and counterclaims in defendants' proposed amended answer, and resolved it accordingly.

Footnote 9:These two theories of recovery are independent and complementary, rather than duplicative. (See Aronson Mayefsky & Sloan, LLP v Praeger, 228 AD3d 182, 185-187 [1st Dept 2024].)